Lonnie D. Giamela (SBN 228435)
E-Mail: lgiamela@fisherphillips.com
LaLonnie V. Gray (SBN 366999)
E-Mail: lgray@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213)330-4500
Facsimile: (213)330-4501

Attorneys for Defendant
Superior Duct Fabrication, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HENRY CORLEW, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR DUCT FABRICATION, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No:<br><br>*[Removed from Los Angeles Superior Court; Case No. 22STCV13075]*<br><br>**DEFENDANT SUPERIOR DUCT FABRICATION, INC.'S NOTICE OF REMOVAL**<br><br>Complaint Filed: April 18, 2022<br>Removal Date:   June 30, 2022<br>Trial Date:       None Set |

**TO PLAINTIFF, HIS COUNSEL OF RECORD, AND TO THE CLERK OF THE COURT FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT Defendant Superior Duct Fabrication, Inc. ("Defendant") by and through its counsel of record Fisher & Phillips LLP, hereby submits this Notice of Removal of this action from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California (Western Division) pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(c), and 1446(b). The grounds for removal are as follows:

## I. STATEMENT OF JURISDICTION.

1. This matter is a civil action over which this District Court has original jurisdiction based on federal question pursuant to 28 U.S.C. § 1331. Specifically, as set forth in more detail below, this action is preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.*, because it is based on rights created by and requires interpretation of a collective bargaining agreement that governs the terms and conditions of Plaintiff Henry Corlew's ("Plaintiff") employment. Therefore, this action may be removed pursuant to 28 U.S.C. § 1441(a) and (c).

## II. VENUE.

2. This action was filed in the California Superior Court for the County of Los Angeles. Thus, venue properly lies in the United States District Court for the Central District of California. *See* 28 U.S.C. §§ 84(c), 1391, and 1441.

## III. PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL.

3. On April 18, 2022, Plaintiff filed a Complaint alleging ten causes of action against Defendant: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Final Wages Not Timely Paid; (6) Wages Not Timely Paid During Employment; (7) Non-Compliant Wage Statements; (8) Failure to Keep Requisite

Payroll Records; (9) Unreimbursed Business Expenses; and (10) Violation of California Business & Professions Code, thereby initiating a civil action in the Los Angeles County Superior Court entitled *Henry Corlew v. Superior Duct Fabrication, Inc. et al.,* Case No. 22STCV13075 ("State Lawsuit").

4.    On May 31, 2022, Plaintiff served Defendant with the Summons, Complaint, and all other relevant materials from the State Lawsuit.  Attached as **Exhibit A** to the Declaration of Lonnie D. Giamela ("Giamela Decl.") is a true and correct copy of the Summons, Complaint, all other materials that were served on Defendant, and all documents on the docket in the State Lawsuit.

5.    As of the date of this Notice of Removal, no other processes, pleadings, and/or orders have been served upon Defendant in the State Lawsuit. (Giamela Decl. at ¶ 5.)

6.    This Notice of Removal is timely filed because it is filed within thirty days of service of the initial pleading setting forth the claim for relief upon which the State Lawsuit is based.  *See* 28 U.S.C. § 1446(b)(3); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (11th Cir. 1999).  In addition, this Notice of Removal has been filed within one year of commencement of the State Lawsuit as required by 28 U.S.C. § 1446(b).  Therefore, this Notice of Removal has been timely filed.

## IV.    FEDERAL QUESTION JURISDICTION BASED ON THE LABOR MANAGEMENT RELATIONS ACT.

7.    The LMRA grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization."  29 U.S.C. § 185(a); *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective bargaining agreement," the claim is preempted, even if based on state law).  "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective

bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). As set forth below, the LMRA confers federal subject matter jurisdiction over this action because Plaintiff's claims arise from the collective bargaining agreement ("CBA") between Defendant and Plaintiff's union, and the resolution of those claims requires interpretation of the CBA. The CBA sets forth policies regarding payment of overtime and overtime hourly rates, the provision of meal and rest periods, the reimbursement of business expenses, the timing of the payment of wages, wage rates, a mandatory grievance procedure and arbitration provision, and other terms and conditions of the Plaintiff and putative class members' employment with Defendant. (Declaration of Lacey Radcliffe ("Radcliffe Decl.") at ¶ 3, **Ex. A** at 5, 8-11, 40-41, 50-51; **Ex. B** at 2-3; **Ex. C** at 6-7, 11-15, 46, 53-54.) Plaintiff's claims place the terms of the CBA at issue and, therefore, are preempted by the LMRA.

**A.    The LMRA Preempts Claims that Either (1) Arise from a Labor Agreement or (2) Require Substantial Interpretation of a Labor Agreement.**

8.    The Ninth Circuit has explained that the LMRA preempts claims in two respects. First, if the claim involves a right that exists because of the CBA rather than state law, then "the claim is preempted, and [the court's] analysis ends there." *Burnside*, 491 F.3d at 1059. Second, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective bargaining agreement," the claim is preempted, even if based on state law. *Id.*

9.    Although the language of LMRA Section 301 is limited to "suits for violation of contracts," it has been construed broadly to cover state-law actions that do not allege a breach of the CBA but, nonetheless, requires interpretation of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms

3

of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as preempted by federal labor-contract law.") (internal citations omitted); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on analysis of a collective bargaining agreement," the claim is preempted by Section 301); *Raphael v. Tesoro Ref. & Mktg. Co., LLC*, No. 15-cv-02862, 2015 WL 3970293, *3 (C.D. Cal. June 30, 2015) ("To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement . . . [a] state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpretation of those terms.").

> **1.    Plaintiff's Claims are Based Upon and Arise from the CBA and, Therefore, are Preempted Under the First *Burnside* Prong.**

10.    The International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union 105 ("Union"), represents Defendant's union hourly, non-exempt employees at Defendant's Pomona, California facility. (Radcliffe Decl. at ¶ 3.)  Plaintiff, during his employment with Defendant, worked at Defendant's Pomona, California facility; was and had always been a Union member during his employment; and the terms and conditions of his employment were governed by the CBA between Defendant and the Union.  (*Id.* at ¶ 2.)

11.    As set forth below, the CBA between Defendant and the Union specifically addresses (1) the employees' rates of pay, the payment of overtime, and the overtime rates; (2) the employees' entitlement to take meal and rest periods and the manner in which the meal and rest periods are authorized and permitted; (3) the timing of Defendant's payment of wages to employees; and (4) Defendant's reimbursement of employee expenses.  (Radcliffe Decl. at ¶ 3, **Ex. A** at 5, 8-11,

40-41, 50-51; **Ex. B** at 2-3; **Ex. C** at 6-7, 11-15, 46, 53-54.)  The CBA also includes a grievance and binding arbitration procedure that is the exclusive forum for resolution of the claims Plaintiff alleged in the Complaint.  (Radcliffe Decl. at ¶ 3; **Ex. A** at 5, 8-11; **Ex. C** at 11-15.)

    12.    The CBA includes the following provisions, in relevant part, regarding wages, hours, the hourly overtime rate, meal and rest breaks, the payment of wages, and the grievance procedure.  (Radcliffe Decl. at ¶ 3, **Ex. A** at 5, 8-11, 40-41, 50-51; **Ex. B** at 2-3; **Ex. C** at 6-7, 11-15, 46, 53-54.)

SMART Local Union No. 105
2120 Auto Centre Drive, Glendora, California 91740-6720
(909) 305-2800  FAX: (909) 305-2822

*Wage Rates for Material Expeditors - Shop Manufacturing and Fabrication - Los Angeles/Orange Empire*

*Effective July 1, 2018 through December 31, 2018*

| | M23 | M26 | M28 | M30 | M35 | M40 |
|---|---|---|---|---|---|---|
| | SF ME23 105 | SF ME26 105 | SF ME28 105 | SF ME30 105 | SF ME35 105 | SF ME40 105 |
| | 23% | 26% | 28% | 30% | 35% | 40% |
| Hourly Taxable Wage (Increase) | $10.18 | $11.51 | $12.40 | $13.28 | $15.50 | $17.71 |

SMART Local Union No. 105
2120 Auto Centre Drive, Glendora, California 91740-6720
(909) 305-2800  FAX: (909) 305-2822

*Wage Rates for Material Expeditors - Shop Manufacturing and Fabrication - Los Angeles/Orange Empire*

*Effective July 1, 2019 through December 31, 2019*

| | M23 | M26 | M28 | M30 | M35 | M40 |
|---|---|---|---|---|---|---|
| | SF ME23 105 | SF ME26 105 | SF ME28 105 | SF ME30 105 | SF ME35 105 | SF ME40 105 |
| | 23% | 26% | 28% | 30% | 35% | 40% |
| Hourly Taxable Wage (Increase) | $10.53 | $11.90 | $12.82 | $13.73 | $16.02 | $18.31 |

### ARTICLE VI

SECTION 1. The regular working day shall consist of **Eight (8)** hours labor in the shop or on the job between 8:00 a.m. and 5:00 p.m. unless modified in local negotiations and the regular working week shall consist of five (5) consecutive **Eight (8)** hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at **one and one-half (1 ½)** times the regular rate. Where conditions warrant, the regular work day may consist of ten (10) hours labor on the job and the regular work week of four (4) ten (10) hour days between Monday and Friday when mutually agreed between the Local Union and Employer.

A make-up day may be scheduled for work missed due to inclement weather, when mutually agreed between the Local Union and Employer. The make-up hours shall be paid at the regular hourly rate of pay. **(See Addenda)**

Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time.

DEFENDANT'S NOTICE OF REMOVAL

FP 44177773.2

SECTION 9. Wages at the established rates specified herein shall be paid **weekly** in the shop or on the job at or before quitting time on **See Addenda** of each week, and no more than two (2) days' pay will be withheld. Alternative payroll procedures, i.e., electronic and/or automatic deposit may be negotiated locally. However, employees when discharged shall be paid in full.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice. The local Employers' Association or the Local Union, on its own initiative, may submit grievances for determination by the Board as provided in this Section. The grievance procedure set forth in this Article applies only to labor-management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board.* Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

### ADDENDUM NO. 24
### WORKING HOURS

SECTION 1. Regular working hours shall consist of forty (40) hours per week, eight (8) hours worked per day, between the hours of 5:00 a.m. and 5:00 p.m. with no more than one (1) hour for lunch. In no event shall starting time in the shop or on the jobsite begin before 5:00 a.m. unless otherwise authorized by the Local Union.

6

DEFENDANT'S NOTICE OF REMOVAL

FP 44177773.2

## ADDENDUM NO. 26
## REST PERIODS

SECTION 1.  Two (2) rest periods shall be observed in all shops and on all jobsites during regular working hours.  These rest periods shall be ten (10) minutes in duration.  The first rest period shall take place midway between start time and meal break; the second rest period shall take place midway between meal break and quitting time.

SECTION 2.  During shift work or overtime work, similar conditions shall apply.  There shall be no additional rest periods during overtime work of two (2) hours or less.

SECTION 3.  The Employers and Employees shall comply with the Collective Bargaining Agreement regarding meal periods in all shops and on all jobsites.  Each Employee must receive a thirty (30) minute meal period within the first five (5) hours of the workday.  An Employee may waive the meal period only if the entire workday does not exceed six (6) hours.  Each Employee must receive a second thirty (30) minutes meal period if the workday extends beyond (10) hours.  The second meal period may be waived by the Employee if the workday does not exceed twelve (12) hours.

## ADDENDUM NO. 27
## OVERTIME

SECTION 1.  Overtime worked beyond the regular work hours, Monday through Friday, and any work on Saturday, shall be paid at one and one-half (1½) times the straight time rate of pay.  In accordance with current California law, hours worked in excess of twelve (12) hours in any work day will be paid at two (2) times the straight time rate of pay.  All hours worked on Sundays and holidays, as defined in the Holidays and Vacations Addendum, shall be paid at two (2) times the straight time rate of pay.

SECTION 2.  Overtime permits shall be required and must be obtained from the Union for all overtime work.  Any violation of this Addendum may be cause for denial of future permits.  The steward, foreman or immediate supervisor shall call the Union for Overtime Permits.

SECTION 3.  A special shut-down permit may be issued by the Sheet Metal, Air, Rail and Transportation Workers Local Union 105 upon request of the Employer when a breakdown of equipment occurs or repair of materials is necessary in existing occupied and operating facilities, provided the Employer notifies the Local Union of the bidding and award of the contract prior to starting said work. One and one-half (1½) times the straight time rate of pay may be permitted on this type of work, if a permit is issued.  Under the terms of this section, a shutdown shall be performed at the straight time rate, with the exception of Sunday and Holidays (as outlined in Section 1 of this Addendum) which will be paid at one and one-half (1 ½) times the straight time rate of pay, if a permit is issued.  If a permit has not been approved by the Local Union prior to the work being performed, Addendum No. 27, Section 1 rates shall apply.

SECTION 4.  Work performed prior to the Employer's established starting time or after the Employer's established quitting time shall be compensated at the contractual overtime rates.

SECTION 5.  The ratio of Apprentices, Pre-Apprentices, and Classified Workers on permit overtime work shall be in conformity with the negotiated ratio as outlined in these Addenda. Apprentices may only work overtime hours that do not conflict with their school attendance as required by the JATC.  Working overtime and missing school will not be accepted as an excuse and will result in disciplinary action.

SECTION 6.  Where conditions do not allow hoisting and rigging of materials to a project or a building during normal working hours, said hoisting and rigging may be done at the wage rate of one and one-half (1½) times the regular rate of pay on Saturday.  Where conditions or laws do not allow rigging during normal working hours on Saturday, hoisting and rigging may be done on Sunday at the wage rate of one and one-half (1½) times the regular rate of pay.

7

FP 44177773.2

13.    Plaintiff's Overtime Claim.    Plaintiff's overtime claim is preempted pursuant to the statutory overtime laws.  "Section 514 of the Cal. Labor Code states that the statutory overtime provisions of § 510 do not apply to an employee who is covered by a valid CBA that expressly provides for the (1) wages, (2) hours of work, (3) working conditions, (4) premium wage rates for all overtime hours, and (5) regular hourly wage, not less than 30% greater than the state minimum wage." *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 18-cv-03054, 2018 WL 3218102, at *2 (C.D. Cal. June 28, 2018), *aff'd sub nom. Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679 (9th Cir. 2020); *see also Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) ("Curtis's CBAs in this case meet the requirements of section 514, and therefore Curtis's claim for overtime pay is controlled by his CBAs").

14.    Here, each of the requirements of Labor Code section 514 have been satisfied.  Plaintiff was an hourly, non-exempt employee.  (Radcliffe Decl. at ¶ 2.**)** Plaintiff's employment with Defendant was covered by the CBA, which expressly provides for the employees' (1) wages, (2) hours of work, (3) working conditions, and (4) premium wage rates for all overtime hours.  (*Id.* at ¶ 3, **Ex. A** at 5, 8-11, 40-41, 50-51; **Ex. B** at 2-3; **Ex. C** at 23-27, 39, 60-61, 49-50, 53-55.) Further, pursuant to the CBA, Plaintiff was paid an hourly rate that was more than 30% greater than the state minimum wage of $11.00 (2018) and $12.00 (2019) per hour that was in effect during Plaintiff's employment with Defendant.  (Radcliffe Decl. at ¶ 2; **Ex. A** at 5, **Ex. B** at 2-3; **Ex. C** at 23-27.)  More specifically, Plaintiff was paid $15.00 (2018) and $16.50 (2019).  (Radcliffe Decl. at ¶ 2.)  When, as in this case, the applicable CBA meets the requirements of Labor Code § 514, the right to overtime exists solely as a result of the CBA and LMRA preemption applies. Accordingly, because the CBA meets the requirements of Labor Code § 514, Plaintiff's overtime claim is preempted by the LMRA.

15.    Plaintiff's Untimely Payment of Wages Claim.    Plaintiff's untimely

payment of wages claim pursuant to § 204 is also preempted. Labor Code § 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees," rather than the provisions of subsections (a) and (b). Cal. Labor Code § 204; *Bradford v. Pro. Tech. Sec. Servs. Inc. (Protech)*, No. 20-cv-02242, 2020 WL 2747767, at *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, Bradford's right to timely payment exists solely as a result for the CBA and is preempted."); *Landy v. Pettigrew Crewing, Inc.*, No. 19-cv-07474, 2019 WL 6245525, at *4 (C.D. Cal. Nov. 22, 2019) ("the Court finds that § 204(c) operates similarly to the statute discussed in *Curtis*: where a CBA provides for a different pay arrangement from that which exists under state law, a covered employee's right to timely payment 'exists solely as a result of the CBA.'") (quoting *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1154 (9th Cir. 2019)). Thus, employers do not need to comply with Labor Code § 204 if a collective bargaining agreement creates a different payment arrangement, as is the case here.

16.    Here, the CBA expressly sets forth payment arrangements in Article VIII, Section 9 that differs from the requirements of § 204.1. (Radcliffe Decl. at ¶ 3, **Ex. A** at 5; **Ex. C** at 6.) The CBA provides for the weekly payment of wages, (*Id.*), whereas the Labor Code § 204 provides for the semimonthly payment of wages. Because Article VIII, Section 9 of the CBA provides for different arrangements for the time and frequency of wage payments, which themselves must be interpreted and analyzed, Plaintiff's claim for violation of Labor Code § 204 is wholly preempted by Section 301 of the LMRA.

17.    <u>Plaintiff's Meal Period Claim.</u>  Labor Code § 512(e) provides for exemption from the meal period requirements of Labor Code § 512(a) when both of the following conditions are satisfied: (1) the employee is covered by a valid collective bargaining agreement; and (2) the valid collective bargaining agreement

expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state's minimum wage rate. Labor Code § 512(f) explains that subdivision (e) specifically applies to employees "employed as a commercial driver," amongst others. When the Labor Code Section 512(e) exemption applies, a meal period claim pursuant to Labor Code Section 512(a) is statutorily barred. *Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679, 680 (9th Cir. 2020) (affirming district court's holding that plaintiff's meal period claims were preempted); *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal. App. 4th 227, 236 (2014) ("subdivision (e)(2) provides an exception to the ordinary rule that an employer must provide meal periods of a specified time after a specified amount of work; that is, it provides that where a collective bargaining agreement meets certain requirements, subdivision (a) 'do[es] not apply.'"). As a result, the meal period claim exists only pursuant to the CBA and, therefore, is preempted by the LMRA under the first prong of the *Burnside* test. *Marquez*, 804 F. App'x at 680; *Araquistain*, 229 Cal. App. 4th at 236.

18. Here, the exemption created by Labor Code § 512 applies to Plaintiff's claims. First, Plaintiff is subject to a valid CBA. (Radcliffe Decl. at ¶¶ 2–3, **Exs. A–C**.) Second, the CBA contains express provisions satisfying the conditions set forth in § 512(e)(2). (*Id.* at ¶ 3, **Ex. A** at 5, 8-11, 40-41, 50-51; **Ex. B** at 2-3; **Ex. C** at 23-27, 39, 60-61, 49-50, 53-55.) Third, Defendant employed Plaintiff as a commercial driver. (*Id.* at ¶ 2.) Courts have found that if the requirements of § 512(e) are met, an employee's § 512 meal period claim would be preempted under the LMRA. *Marquez*, 804 F. App'x at 681 (9th Cir. 2020) (finding the CBA met section 512(e)'s exemption requirements and thus the plaintiff's "right to meal periods 'exist[ed] solely as a result of the [CBAs]'"); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 751 (S.D. Cal. 2021) (because defendants satisfied

1    their burden to show that § 512(e) applied, plaintiff's meal period claim was

2    preempted by the LMRA).

3         19.    In sum, Plaintiff's state law claims for unpaid overtime under Labor

4    Code § 510, untimely payment of wages under Labor Code § 204, and failure to

5    provide compliant meal periods and/or premium pay under Labor Code § 512 are

6    preempted by Section 301 under the first prong of *Burnside* and, thus, this matter

7    is properly removable pursuant to 28 U.S.C. § 1441. *Coria v. Recology, Inc.*, 63 F.

8    Supp. 3d 1093, 1098–99 (N.D. Cal. 2014) (holding plaintiff's meal period and

9    overtime claims arise under the CBA and are preempted by the LMRA because

10   Labor Code sections 512(e) and 514 exemptions were met); *Bradford*, 2020 WL

11   2747767, at *4.

12       **2.**    **Plaintiff's Claims are Preempted Under the Second**

13       ***Burnside* Prong Because They Require Interpretation of the**

14       **CBA.**

15       20.    Under the second *Burnside* prong, Plaintiff's claims are preempted by

16   the LMRA because they require interpretation of the CBA provisions regarding

17   Defendant's alleged failure to keep payroll records and provide expense

18   reimbursement.  Plaintiff's claims place the terms of these CBAs squarely at issue.

19   As demonstrated below, resolving the parties' disputes is "substantially dependent"

20   on the interpretation of the CBA. *Burnside*, 491 F.3d at 1059–60; *Firestone v. S.*

21   *Calif Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000) ("§ 301 does preempt state law

22   claims that are 'substantially dependent' on an analysis of a collective bargaining

23   agreement").

24       21.    <u>Plaintiff's Failure to Keep Payroll Records Claims.</u>  Plaintiff alleges

25   that Defendant "intentionally and willfully failed to keep accurate and complete

26   payroll records showing the hours worked daily and the wages paid to Plaintiff and

27   the other class members."  (Giamela Decl., Ex. A, Compl. at ¶ 103.)

28       22.    The CBA provides the following regarding employer records.

1  (Radcliffe Decl. at ¶¶ 2–3; **Ex. C** at 66-67.)

2
3      SECTION 4.  The Employer is required to maintain weekly timecards indicating the name of the Employee, daily starting and finishing time, daily regular hours worked, daily overtime hours worked and summarizing the total regular hours and total overtime hours for each pay period.
4
5      SECTION 6.  The Employer is required to maintain weekly payroll records indicating the name of the Employee, his classification, his rate of pay, total regular hours worked, total overtime hours worked, his regular pay, his overtime pay, his total pay, his weekly payments for travel time, zone transportation, mileage and subsistence, his deductions for payroll taxes required under the law, and the amount of his net check.
6
7
8      SECTION 8.  The Employer is required to maintain all of the records enumerated above for a period of five (5) years.  This section is without prejudice to other contractual and/or legal obligations.
9

10      23.    Plaintiff's failure to keep payroll records claim is preempted because

11  resolving it would require substantial interpretation of the CBA.  For example, the

12  Court is required to interpret the CBA to determine what information must be

13  maintained on employees' payroll records and how long the employer must

14  maintain the payroll records.  Accordingly, Plaintiff's failure to keep payroll

15  records claim is preempted under the second *Burnside* prong.

16      24.    Plaintiff's Expense Reimbursement Claims.    Plaintiff alleges that

17  Defendant "intentionally and willfully failed to reimburse Plaintiff and the other

18  class members for all necessary business-related expenses and costs."  (Giamela

19  Decl., Ex. A, Compl. at ¶ 109.)

20      25.    The CBA provides the following regarding reimbursement of business

21  expenses:

22                          **ADDENDUM NO. 19**
                            **PARKING**

23      SECTION 1.  The Employer shall reimburse the Employee for actual parking expenses incurred by the Employee.  No Employee shall be required to park any farther away than the adjacent block on which the shop or jobsite is located, if available.
24

25      26.    Plaintiff's expense reimbursement claim is preempted because

26  resolving it would require substantial interpretation of the CBA.  *Linebarger v.*

27  *Graphic Packaging Int'l, LLC*, No. 20-cv-00309, 2020 WL 1934958, at *6 (C.D.

28  Cal. Apr. 22, 2020) (holding expense reimbursement claim preempted under the

DEFENDANT'S NOTICE OF REMOVAL

FP 44177773.2

second prong of the Burnside test because court would be required to interpret the expense reimbursement provision of CBA to resolve plaintiff's expense reimbursement claim). For example, the Court is required to interpret the CBA to determine when employees receive reimbursement for parking. The Court also would be required to interpret the designated "adjacent block" and the meaning of "parking expenses." Accordingly, Plaintiff's expense reimbursement claim is preempted under the second *Burnside* prong.

**B.    Supplemental Jurisdiction.**

27.    Plaintiff's claims either depend upon and/or require interpretation of the collective bargaining agreements and, thus, arise under Section 301. The alleged unpaid rest period premiums, unpaid minimum wages, final wages not timely paid, non-compliant wage statements, and violation of California Business & Professions Code claims are all derivative of the underlying overtime, meal break, failure to keep requisite payroll records, and expense reimbursement claims. To the extent, however, there are remaining claims for relief that are not preempted by Section 301, these claims are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution.

**V.    PROCEDURAL PREREQUISITES.**

28.    Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Central District of California is the appropriate court to which to remove this action from the Los Angeles County Superior Court, where the action was filed.

29.    As required by 28 U.S.C. § 1446(d), a written notice of this Notice of Removal in the United States District Court for the Central District of California will be served on Plaintiff's counsel of record: Lawyers for Justice, PC. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Los Angeles.

DEFENDANT'S NOTICE OF REMOVAL

FP 44177773.2

1     30.    In filing this notice, Defendant does not waive any defenses.

2     31.    In filing this notice, Defendant does not admit any of the allegations

3 made in Plaintiff's State Lawsuit.

4 **VI.    CONCLUSION.**

5     Based on the foregoing, Defendant prays that the above-described action

6 pending in the Superior Court of California, County of Los Angeles be removed to

7 the United States District Court for the Central District of California.

8

9 Dated:  June 30, 2022                              FISHER & PHILLIPS LLP

10

11                                     By:    */s/ Lonnie D. Giamela*
                                              Lonnie D. Giamela
12                                            LaLonnie V. Gray
                                              Attorneys for Superior Duct
13                                            Fabrication, Inc.

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 444 South Flower Street, Suite 1500, Los Angeles, California, 90071.

On June 30, 2022 I served the foregoing document entitled **DEFENDANT SUPERIOR DUCT FABRICATION, INC.'S NOTICE OF REMOVAL** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

Edwin Aiwazian                          Attorneys for Henry Corlew
LAWYERS FOR JUSTICE, PC
410 West Arden Avenue, Suite 203        edwin@calljustice.com
Glendale, California 91203

☒    **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed June 30, 2022 at Los Angeles, California.

Cina Kim                          By: /s/ Cina Kim
_____                _____
Print Name                             Signature